UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

RONALD T. WILLIAMS                    )
                                      )
V.                                    )                    NO. 2:09-CV-283
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security       )

REPORT AND RECOMMENDATION

This is an action for judicial review of the Commissioner's final decision denying the

plaintiff's application for Supplemental Security Income under the Social Security Act. The

matter is before the United States Magistrate Judge, under the standing orders of the Court

and 28 U.S.C. § 636 for a report and recommendation. Both the plaintiff and the defendant

Commissioner have filed dispositive Motions [Docs. 8 and 10].

The sole function of this Court in making this review is to determine whether the

findings of the Secretary are supported by substantial evidence in the record. *McCormick

v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial

evidence" is defined as evidence that a reasonable mind might accept as adequate to support

the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough

to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought

to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607

(1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor

decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even

if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff filed his application alleging that he is disabled due to HIV, hepatitis C, and panic attacks. He was 47 years of age at the time of the hearing decision, a person "closely approaching advanced age." He has a 10th Grade or "limited" education, but is able to communicate in English. He has past relevant work experience as a construction worker, which was classified as "heavy" exertion. Plaintiff alleges that he previously received SSI benefits for some period of time which were terminated when he was sent to prison in 2005.

Plaintiff apparently has a long history of drug and alcohol abuse. The medical record is summarized by plaintiff's counsel in his brief as follows:

> Plaintiff received treatment at Piedmont Medical Center on October 27, 2003, due to a several week history of lesions on the scalp. The diagnosis was shingles (Tr. 76-186).
>
> Plaintiff was admitted to Piedmont Medical Center from October 30, 2003 through November 12, 2003, secondary to altered mental state after being found unconscious. HIV testing was done on admission and came back positive. MRI scan of the brain showed abnormal signal in the left medial aspect of the left temporal lobe and the right caudate nucleus, with questionable involvement of the tip of the right temporal lobe and subinsular cortex. EEG showed generalized slowing compatible with toxic or metabolic encephalopathy and cerebrospinal fluid from lumbar puncture came back positive for cryptococcal antigen. The discharge diagnoses were cryptococcal meningitis, herpes zoster, advanced HIV, history of ethanol abuse, and history of IV drug use (Tr. 187-245).
>
> Dr. John Narro treated Plaintiff from April 18, 2005 through November 1, 2006, for regular follow-up of HIV positive disease and hepatitis C co-infection. During this time, Plaintiff's viral load remained elevated and his weight decrease from 137 pounds to 134.5 pounds. Additional problems noted include difficulty sleeping and reactive hepatitis A antibody (Tr. 246-275).
>
> On January 3, 2007 and April 16, 2007, two separate non-examining state agency physicians opined Plaintiff's physical impairment(s) are not severe (Tr. 276-283).
>
> Plaintiff received treatment at Family Practice Associates from April 1, 2005

through April 29, 2008. Conditions and complaints addressed during this time include HIV/AIDS, hepatitis C, acute bronchitis, nasal bone fracture, right knee pain, dizzy spells resulting in falls, left knee injury, and chronic insomnia. During this time, Plaintiff's weight dropped from 144 to 133 (Tr. 284-293, 346-358). On May 29, 2007, right knee x-rays revealed fairly severe narrowing of the medial joint space compartment and also narrowing of the patellofemoral joint space compartment with some mild spurring (Tr. 284).

Plaintiff received treatment at The Christopher Clinic from November 10, 2003 through December 2, 2004, due to advanced HIV, history of cryptococcal meningitis, hepatitis C, and rashes (Tr. 294-322).

Plaintiff has received treatment at Sweetwater Hospital. On May 3, 2005, treatment was rendered for right rib and left eye pain. Plaintiff returned on December 20, 2005, with complaints of low back pain. Lumbar spine x-rays showed early degenerative changes involving the L4 and L5 levels with small marginal anterior osteophyte formation (spondylosis deformans). The diagnosis was acute lumbar strain (323-343).

Plaintiff continued treatment by Dr. Narro from November 2, 2006 through December 12, 2008, during which time he was suffering HIV positive disease, hepatitis C, worsening insomnia, persistent weight loss, and falling episodes (Tr. 359-379). By May 14, 2008, Plaintiff's weight was down to 124 pounds (Tr. 363).

Plaintiff underwent assessment at Volunteer Behavioral Health Care System on February 12, 2009, upon referral by Family Practice. Plaintiff reported that he got depressed in 2003 when he found out he had HIV; that he does not sleep and has panic attacks; that he wants to tear things up and kill things; that he does not like people and has lived alone in the mountains; that he gets irritated when he is in pain; that he gets more mad at himself than anything; that if he does not do evil, he thinks evil; and that he has problems keeping a line of thought when trying to focus. On mental status exam, Plaintiff's speech was soft; his behavior was anxious and agitated; his mood was anxious; and his concentration, insight, judgment, and impulse ratings were fair. The diagnosis was generalized anxiety disorder, with a current global assessment of functioning [hereinafter "GAF"] of 49. In summary, it was noted Plaintiff is now living in the mountains away from everyone as "I just don't like people very much," he discusses significant anxiety symptoms and avoids public/social altogether, he states he gets lonely talking to the trees, he discusses being HIV positive and issues related to that, and he states he has never been the same since 2004 when his wife was killed. A functional assessment notes Plaintiff is mildly limited in activities of daily living; markedly limited in interpersonal functioning; moderately limited in concentration, task performance, and pace; and moderately limited in adaptation to change (Tr. 380-386).

Plaintiff underwent consultative exam by Dr. Emelito Pinga on March 30, 2009. Dr. Pinga noted Plaintiff's history of extensive herpes zoster infection on October 30, 2003, with positive blood test for human immunodeficiency virus infection. On exam, Plaintiff's was slightly built and weighed 126 pounds. The diagnosis was human immunodeficiency virus infection in remission, on therapy with Norvir, Truvada, and Reyataz tablets. In the body of his report, Dr. Pinga opined Plaintiff could sit six hours in an eight-hour workday; could stand and walk five hours in an eight-hour workday; and would be limited to occasional lifting up weights of ten pounds within an eight-hour workday cumulative, with rest period of 15 minutes within one-hour interval (Tr. 387-

390).

> In the attached physical assessment, Dr. Pinga opined Plaintiff can occasionally lift/carry up to ten pounds; can sit for a total of six hours in an eight-hour workday, one hour without interruption; can stand for a total of five hours in an eight-hour workday, one hour without interruption; can walk for a total of five hours in an eight-hour workday, one hour without interruption; can frequently (1/3 to 2/3) reach, handle, finger, feel, push/pull, and operate foot controls; can never climb ladders or scaffolds; can occasionally (up to 1/3) climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; can never tolerate exposure to unprotected heights; and can occasionally tolerate exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold, extreme heat, vibrations, and dusts, odors, fumes, and pulmonary irritants (Tr. 391-397).

[Doc. 9, pgs. 2-5].

At the administrative hearing, the Administrative Law Judge ("ALJ") called Rebecca Williams, a vocational expert. The ALJ asked Ms. Williams to assume the plaintiff had a 10th grade education and was capable of sedentary work, "with no public work and no food work either, because of the HIV and the Hepatitis." When asked if there were jobs the plaintiff could perform, she opined that in Tennessee there were 4,000 assembly jobs, such as a "buckle wire inserter;" 700 inspecting jobs such as a "film touch up inspector;" and 1,000 jobs as a "cuff folder." When asked to assume the plaintiff had the same RFC except at the light work level, she identified 400 jobs as a bottling line attendant and 13,000 "general laborer" types of jobs. [Tr. 38-39].

Also during the hearing, the ALJ noted that there had not been a physical consultative examination. He stated "I'll go ahead with the CE. I don't know why DDS didn't know that." Also, the ALJ stated he was "going to try to find the old file" from where plaintiff was awarded SSI benefits to "get a picture as to why they awarded it at that time." [Tr. 36].

Following that hearing, the ALJ had the plaintiff examined by Dr. Pinga, with the resulting assessment set forth hereinabove. Plaintiff's counsel subsequently retained Donna

J. Bardsley, also a vocational expert, to opine whether any jobs would be available to the plaintiff if he had the limitations found by Dr. Pinga. Ms. Bardsley opined there would not. [Tr. 171-72].

In his hearing decision, the ALJ found that the plaintiff suffered from severe impairments of HIV seropositivity, in remission; and hepatitis C, quiescent. The ALJ also found that the plaintiff retained the residual functional capacity to perform light work, except for work involving working with food and work requiring contact with the general public. [Tr. 13]. He specifically rejected the medical assessment of Dr. Pinga as being unsupported by Dr. Pinga's examination or by any findings of Dr. Narro, the treating physician. [Tr. 17-18]. He found that the plaintiff did not have a severe mental impairment and that "the record does not support the alleged mental impairments or any attempt at mental health treatment." [Tr. 18]. He found that the plaintiff could perform the sedentary and light jobs to which VE Williams testified at the hearing. Accordingly, he found that the plaintiff was "not disabled." [Tr. 19-20].

Plaintiff raises a number of concise, well-stated objections to the Commissioner's decision. The first, and most determinative in the opinion of this Court, is the fact that the ALJ, after rejecting the limitations found by Dr. Pinga to whom plaintiff was sent by the ALJ, held that the plaintiff was capable of performing light work. Plaintiff also asserts that the ALJ erred in not finding a severe mental impairment. Finally, plaintiff argues that the ALJ erred by not finding out the particulars of the alleged award of SSI benefits to plaintiff which were terminated when he went to prison.

Dr. Pinga's opinion obviously troubled the ALJ to a great degree. The ALJ deemed

a consultative examination important to a just resolution of the plaintiff's claim. He was correct in ordering that examination to take place. However, that correctness is not diminished by the fact that the ALJ disagreed with Dr. Pinga's findings. He is not bound by a medical assessment which he finds lacks objective clinical backing, but the ALJ cannot then just "find" a physical RFC out of whole cloth. Dr. Pinga's allegedly unsupported opinion is by definition, more of a "medical" opinion than one arrived at by the ALJ, or this Court, or any other layperson. The ALJ is not "stuck" with an unsupported opinion, but the remedy is to have the plaintiff consultatively evaluated again. In order to have "substantial evidence" to support his decision, the ALJ must have "evidence." The fact that two state agency non-examining physicians found no impairment from the very scanty record available to them at the time those assessments were made is of no consequence. The ALJ does not appear to mention them or rely upon them, and even if he did, the fact that an examining physician found physical limitations is paramount in this situation.

Contrary to the ALJ's statement that the plaintiff had not made "any attempt at mental health treatment," he quite simply did. He was referred to Volunteer Behavioral Health Care System by Dr. Narro. A GAF of 49 indicates the existence of a severe mental impairment, as does a "marked" limitation in interpersonal functioning. [Tr. 380-84]. The Commissioner argues that an ALJ is not obligated to obtain a consultative examination when the record is "sufficient" to support a decision. However, the Court is uncertain what part of the "record" supports the ALJ's decision in the face of the mental assessment by Volunteer other than the ALJ's own opinion. There was no evaluation by DDS psychologists and none by a consultative examiner. The ALJ may be exactly right regarding his *hunch* that the plaintiff

does not have a mental impairment, or that if he does it does not preclude substantial gainful activity. But some competent evidence is necessary for him, as finder of fact, to rely upon.

Finally, plaintiff asserts that the Commissioner should find out the particulars of plaintiff's alleged award of SSI benefits in the past. It may very well be easier for the Commissioner to determine whether plaintiff ever was awarded benefits and what findings were made, but plaintiff's counsel is certainly also capable of ferreting this out. The Court is simply in the dark, as is the ALJ and the plaintiff.

The ALJ and the Commissioner's brief both point out the fact that the plaintiff is not credible or consistent in his statements. All of that may be true. In fact, it appears to be true. However, the issues upon which this case turns in this appeal have nothing to do with his credibility. The credibility of Dr. Pinga and Volunteer may be in question, but plaintiff's does not matter regarding these issues. If the ALJ were considering the weight to give an opinion from another health care professional finding less restrictions than one of them, then plaintiff's credibility could factor into that decision. But plaintiff's lack of veracity does not change the present analysis.

As suggested by the defendant, this is certainly not a case for a judicial award of benefits. There are evidentiary deficiencies in the record, and a remand is the only proper vehicle to correct them. As argued by the Commissioner, the case should be remanded in order for the ALJ to obtain further medical proof regarding the plaintiff's physical capabilities and his alleged mental limitations. Someone, *and not necessarily the Commissioner*, should determine whether the plaintiff previously received benefits and on what basis were they awarded. To these ends, it is respectfully recommended that the

plaintiff's Motion for Summary Judgment [Doc. 8] be GRANTED insofar as it suggests a remand. It is further recommended that the defendant Commissioner's Motion [Doc. 10] also be GRANTED to the extent it suggests that a remand is the proper course of action at this point, but otherwise DENIED.[1]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[1]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).